# U.S. District Court

## Western District of North Carolina

# Notice of Electronic Filing

The following transaction was entered on 9/29/2025 at 11:01 AM EDT and filed on 9/29/2025

**Case Name:** McKinney v. Prisma Health Greenville Hospital et al

**Case Number:** 3:25-cv-00681-MOC-DCK

**Filer:**

**Document Number:** 12

**Docket Text:**
**SUMMONS Returned Executed. Richard Allen, Russell Guest, Kimura Logistics, Magna International, Prisma Health Greenville Hospital, WJCB Law Firm (South Lewis) served on 9/11/2025, answer due 10/2/2025. (add)**

**3:25-cv-00681-MOC-DCK Notice has been electronically mailed to:**

Sonji McKinney    mckinneysonji@gmail.com

Demetrius Hunter                    01/17/2019

I was the team lead AT Kimura at the time of SonJi McKinney's accident. The BMW outbound Loading Dock was being used for SonJi to Inspect parts before she would Release them from the Quality hold. There was not a separate Quality hold area that was being used for inspecting parts at the time of her accident. I started my shift around 6pm and SonJi arrive at the same time. I Remember Daryle Starting his Shift around 10pm. Daryle was aware that SonJi was there Checking Parts because he had been bringing her loads of parts for hours before he hit her with the forklift. Daryle was Driving forward with a load of bins and was going to fast When he hit SonJi. And was not Paying attention. I think he was in a hurry because of the Quality alert and didn't want to get behind in his work. I Don't think SonJi Did anything wrong to cause this accident at the time I saw Daryle hit her with the forklift. I did not hear daryle blow the horn entering the Staging area. I was working with SonJi most of the night and at the time I saw her get hit. I never saw anyone ask SonJi to put on a vest.

Before the accident Kimura didn't have a Policy for Drive employees to Check in and wear a vest. That policy didn't start until after Sonji accident. No one ever interview me from Kimura about Sonji accident.

Demetrus Hunter 01/17/2019



# Accident report for sonji McKinney [Inbox]

**Demetrius Hunter** 12/12/2024

to mstites, me

| From | Demetrius Hunter · demetriushunter028@gmail.com |
| --- | --- |
| To | mstites@wcc.sc.gov |
| Cc | Sonji0349@gmail.com |
| Date | Dec 12, 2024, 5:10 PM |
| 🔒 | Standard encryption (TLS). View security details |

Good afternoon, I like to attached my statement to this email about what happen to sonji at kimura logistics back in July of 2015. Please feel free to contact me at 864-804-3347 or reach me by email. Thanks and have a blessed day day.

**guestbrady.sharefile.com**

📄 Demetrius Hunter STATEMENT 1....pdf

I never saw anyone ask sonji to put on a vest.

Before the accident kimura didn't have a policy for Drive employees to check's

IMG_3943.png

↩ ▾ Reply

 **Demetrius Hunter** 12/14/2024   

to me ⌄

--------- Forwarded message ---------
From: **Demetrius Hunter** <demetriushunter028@gmail.com>
Date: Thu, Dec 12, 2024 at 5:14 PM
Subject: Re: Accident report for sonji McKinney
To: <mstites@wcc.sc.gov>

Also there should be footage of the tape when the accident happen because we had cameras facing the dock doors as well and if there are no tapes then they have been erased from that time frame

Show quoted text



*Magna
Russell and
Richard
Attorney

Sonji McKinney 11:29 PM
to Abbott, Mackelcan, Da... ∨

From  Sonji McKinney • mckinneysonji@gmail.com

To  Abbott, Blake G. • babbott@csvl.law

Cc  Mackelcan, Douglas W. • dmackelcan@csvl.law
    Davis, Lars • ldavis@csvl.law

Date  Oct 10, 2025, 11:29 PM

View security details

Blake,
When you called me before receiving this email, you stated on the phone that you all excepted the 1st complaint and no need to respond to the second amended complaint. I was getting upset and I stated to you that your clients asked for millions and never told me anything!! Richard and Russell had me sign legal documents under duress and mental health stress and medication. I have all the proof. God seen how your clients did me and he's not pleased. God also heard our conversation on the phone. Tell the truth Blake!! Please help me understand the nature of your call to me because you stated one thing and did another. Thank you 🙏

Sonji Mckinney

e: Workers' Compensation Case and Change of Condition Inquiry

mes·ge

**Sherlen Crawford** <sherlen98@gmail.com>
To: Soji McKinney <mckinneysonji@gmail.com>

Sun, Aug 24, 2025 at 11:10 P

Dear Sonji,

Thank you for sharing the details of your workers' compensation case and hiring me for research purposes only. I understand how difficult and frustrating this process has been for you, especially given the concerns you've raised about attorney misconduct and the circumstances surrounding the clincher agreement.

Based on what you've described, it sounds like you're exploring two key avenues: (1) challenging the validity of the clincher due to alleged duress and misrepresentation, and (2) pursuing additional benefits under the "change of condition" doctrine. Both are serious matters, and there is precedent in South Carolina law that may support your position.

Here are a few relevant cases that could strengthen your argument:

- Paula Russell (SC Supreme Court, 2025): The Court reversed a denial of benefits where medical evidence showed the claimant's condition had worsened after the original award. This case reinforces the importance of expert testimony in proving deterioration.

- Hoston v. Garda World Security (2018): The Court of Appeals allowed the claim to be reopened when the worsening was linked to the original injury and the request was filed within the statutory time frame. This highlights the importance of timing and causation.

- Estridge v. Joslyn Clark Controls, Inc. (1997): The court remanded the case for proper evaluation of psychological symptoms that may have been causally related to the workplace injury. This could be especially relevant if your condition now includes mental health components that weren't previously considered.

If you have medical documentation showing your condition has worsened since the clincher was signed, and if you can demonstrate that the agreement was signed under duress or misrepresentation, you may have grounds to pursue both a reopening and a challenge to the settlement itself.

I'd strongly recommend consulting with a workers' compensation attorney who is experienced in post-settlement litigation and change of condition claims. If you'd like, I can help you identify some resources or legal contacts in your area.

Please don't hesitate to reach out again if you need help organizing your documentation or preparing for a consultation. You deserve to be heard and supported through this process.

Warm regards,
Shen Crawford
S.C. Paralegal & Notary Services
864-949-6467
sherlen98@gmail.com



nji McKinney <mckinneysonji@gmail.com>                                    Thu, Mar 6, 2025 at 11:45 /
: WCC Appeals, <appeals@wcc.sc.gov>, South Lewis <jslewis@wjcblaw.com>

--------- Forwarded message ---------
From: **Sonji McKinney** <sonji0349@gmail.com>
Date: Fri, Dec 6, 2024, 2:28 PM
Subject: Fwd: Appealing a Settlement w/ a Clincher Involved
To: <mckinneysonji@gmail.com>

--------- Forwarded message ---------
From: **Katrina Ray** <paralegalspluslounge@gmail.com>
Date: Fri, Dec 6, 2024 at 1:23 PM
Subject: Appealing a Settlement w/ a Clincher Involved
To: Sonji McKinney Tate <sonji0349@gmail.com>

To whom it may concern:

To successfully appeal a clincher settlement, you must present strong medical evidence demonstrating a substantial worsening of your work-related injury since the settlement was reached.*

Miss McKinney has sufficient evidence in her updated medical records indicating her much worsening condition. Her new Dr in NC quickly identified the debilitating condition and has been adamant in stating this condition is directly related to her work related incident at Magna Drive and Kimura Logistics (2015) after experiencing years of being ignored and accused of lying specifically by (Prisma Health associates). However, this evidence is clearly ignored at her prev hearing w/ the single Commissioner. Also, the letters from her witnesses were not even considered. By law these are exactly what is considered in appealing a clincher in SC.

She was not educated on any clincher by definition. She was also told the amount she was given was a lot of money, although according to her employment contract at Magna Drive, she was to be making $110,000/yr as a Supervisor, but was only offered a $425,000 settlement, which was originally $6,000,000. Why would any competent adult, knowing they can no longer work, sign a settlement only providing her w/ a payment equivalent to only 4 yrs of her employment? She was under approx 12 medications at the time and a lot of them being psych drugs. Why would your attorney have you sign any legal document while you are being treated for mental health disease? That is deemed as signing a document under a state of duress, which is also illegal. Also why would your attorney tell you not to read your settlement paperwork? Obviously the attorneys are privy to this info (mental health issues) bc that was their whole basis for obtaining disability for the plaintiff, not her physical ailments. As much as she has been in & out of hospitals throughout this process, Prisma Health has ignored her at all costs. Were her attorneys & Prisma Health stringing her along to run out her statute of limitations? One could allege this from all the incriminating behavior exhibited by Prisma Health & also Guest & Brady, who has since expanded their business and continued to ignore Miss McKinney's cries for help.

Aside from this, she has lost approximately 10 yrs of her life from this. She cannot enjoy her grandkids or kids. Her life has significantly changed since this incident. Last year she suffered paralysis from the waist down and was also ignored by Prisma Health then. They performed an EKG and sent her home w/ some medication that did not work at all. When attempting to go to another Prisma Health location, her symptoms were also ignored. Finally when she was seen by Prisma Health, the attending physician adv her that what she was experiencing was very dangerous but left her in a waiting room in the ER for almost 3 days before getting her into a room. There were others there w/ much milder complaints & symptoms than her but were taken back much earlier than her and put in a room. Why?

Why did she have to move to Charlotte, NC to be taken seriously by a physician? Why were no attorneys (in SC) willing to assist her properly in this manner bc clearly, Guest & Brady were in it for themselves and not their client, which is the only person they should be concerned about? No attorney in SC would assist her in these proceedings. Is it bc Prisma Health is involved? So, after careful consideration, was her treatment even fair? Was her evidence of a more debilitating disease caused by her work related accident not considered bc these are well known entities involved?

There is so much evidence to confirm her disease is directly related to her work related injury from 2015. Her new Dr (in NC) says so. Let's take into consideration this new Dr in NC has nothing to gain from their statement. They have the credentials to treat her and the competence to provide facts in their statement to the court system. Her main issue is complying w/ a confidential/stating what the law is; which is to prove a more debilitating disease from the work related injury? The proof is here in black and white. However, Guest &

Kimura and Guest & Brady.

So after careful consideration, the plaintiff plans to file a motion for a change of venue. After being ignored by Prisma Health, Guest & Brady and Magna Drive Kimura and the SCWCC, it has become evident that she cannot get a fair trial here in SC.

There are so many questions on the mishandling of this case that should be addressed. Why was the only witness not interviewed during this process? Why was it not addressed that Magna/Kimura had no safety measure in place for their employees to wear neon colored vests (to ensure they are seen in the warehouse by their peers) until after her injury? Why would her ailments be ignored for the entire time she spent here by Prisma Health and its affiliates? Why was her Dr in NC immediately scheduling the plaintiff a back surgery after only a few visits?

The bottom line is her mental and physical health has declined since the work related injury. It has been documented by her physician. She has spent approx 10 yrs in excruciating pain and been unable to enjoy her life and any normal routine activites. Read her witnesses emails and Dr's updated medical records. This is all required to appeal a clincher agreement. For whatever reason the law is clearly being ignored in this instance. Miss McKinney is entitled to a fair hearing and obviously that can only take place in another state.

Sincerely,
Katrina Ray
Paralegals Plus Lounge, LLC
864.320.6110
katrinaray@paralegalspluslounge.net

**SCWCC**

**FEB 05 2025**

INSURANCE &
MEDICAL SERVICES

State of South Carolina County of Greenville
South Carolina Workers Compensation Commission    1510391

Sonji McKinney

    Plaintiff

    -vs-

Magna Drive Automotive and American Zurich
Insurance Company

    Defendants

### AFFIDAVIT

I, Katrina Ray, of Greenville, in Greenville, South Carolina, MAKE OATH AND SAY THAT:

1.    Her worker's comp case involving a clincher has since been denied by the single commissioner.
The basis for reopening a settlement w/ a clincher involved is to prove the victim's condition
(from the work injury) has since worsened. There are new medical records indicating her
condition has worsened and no one at Prisma Health would assist her during her time in
Greenville SC. Until she moved to Charlotte, NC, no one would assist her. When she was being
seen in NC her doctor scheduled a back surgery and stated that her condition was due to her work
injury in 2015. None of this documented info was taken into consideration during her appeal.
Therefore she would like to appeal his decision and also req a motion for a change of venue since
she cannot seem to get a fair hearing in SC being that all the judicial parties involved have been
prejudicial in their decisions. Clearly if she has new medical records reflecting a substantial
change in her condition and witnesses' affidavits which clearly prove this is the case, why is this
not being considered? She feels due to the fact there are such big companies w/ large reputations
involved, the attorneys allegedly may see this as a threat or even being more involved w/ these
companies than they'll ever admit to. For these reasons and much more she would not only like to
appeal the Commissioner's decision but again, to req a change of venue.

Page 1 of 3


Turn Over

2. She had a work related injury at Magna Drive in 2015. She was hit twice by a forklift.

3. She hired Guest & Brady as her worker's comp attorneys believing they had her best interest at heart. They started at req $6,000,000 from Magna Drive and Kimura Logistics as the settlement amount. It went down to $400,000+.

4. Guest and Brady advised Miss McKinney (specifically) to not to read a legal document (settlement agreement) before signing. Whilst doing so, they also had her medical records stating not only was she suffering mentally but physically but still had her sign a settlement agreement under these conditions . This behavior is called signing a document under a state of duress. She has a list of all her medications which included psych meds. They also told her this was a lot of money and convinced her the insurance wouldn't pay anymore. (Medical Records)

5. Prior to her work related injury, Miss McKinney had just signed a contract as a lead/supervisor at her job for a yearly salary of $110,000. Why would she (in her normal state of mind), knowing she can never work again, sign for a settlement that would only be equivalent to about 4 yrs of her annual income? Obviously she shouldn't have been asked to sign any legal documents in this condition. It is illegal to do so.

6. Since she was told not to read but to just sign the settlement agreement there was no explanation of a clincher. No one on her legal team advised her to keep her case open. She was never given that option.

7. The only witness to the work related injury was never interviewed.

8. At the time of the incident there was no safety measure in place requesting the employees to wear any reflective clothing (like neon colored vests) allowing them to be seen by each other when in the warehouse until after this incident in 2015.

9. During the entire 3 yrs of the statute of limitations of her case, her doctors (Prisma Health) ignored her symptoms, implying Miss McKinney was lying about her condition. Her attorneys ignored her many cries for help. However her new Dr states otherwise.

10. Until she moved to Charlotte, NC and began seeing a new doctor, she was told repeatedly by Prisma Health that nothing was wrong w/ her back. She was dismissed w/o being treated for the symptoms she suffered from the injury several times. Her new Dr has since written a statement confirming her condition is definitely from her work related incident in July 2015 & has

MEDICAL SERVICES
& INSURANCE

SCMCC

worsened since then. Her Dr has since performed a much needed back surgery on Miss McKinney, which all the doctors at Prisma Health denied her.

STATE OF SOUTH CAROLINA

COUNTY OF GREENVILLE

SUBSCRIBED AND SWORN TO BEFORE
ME, on the 13th day of December, 2024

Katrina Ray

(Signature)

Katrina Ray

Signature _____ (Seal)

NOTARY PUBLIC

My Commission expires:

My Commission Expires
January 13, 2026

Copyright 2002-2024, LegalContracts.com

Page 3 of 3



**Dismissed Without My Consent**

STATE OF SOUTH CAROLINA      IN THE COURT OF COMMON PLEAS

COUNTY OF GREENVILLE

Sonji Renae McKinney,      Docket No.: 2017-CP-23-07967

Plaintiff,

v.      **STIPULATION OF DISMISSAL**

Kimura, Inc.,

Defendant.

The undersigned attorney for the Plaintiff and the undersigned attorney for the Defendant Kimura stipulate that all controversy between the parties regarding this action is fully resolved. Therefore, pursuant to Rule 41(a)(1) of the *South Carolina Rules of Civil Procedure*, it is hereby stipulated that the Plaintiff's Complaint and this action are dismissed with prejudice and forever ended. Each party agrees to bear her/his/its own costs and attorney's fees.

_s/Richard K. Allen, III_
RICHARD K. ALLEN, III, S.C. BAR #74865
GUEST & BRADY, LLC
900 E. North Street, Suite 210
Greenville, SC 29601
Attorney for the Plaintiff

_s/Kay G. Crowe_
KAY G. CROWE, S.C. BAR #1481
BARNES, ALFORD, STORK & JOHNSON, LLP
1613 Main Street (29201)
Post Office Box 8448
Columbia, South Carolina 29202
Attorneys for the Defendant

ELECTRONICALLY FILED - 2019 Feb 28 2:20 PM - GREENVILLE - COMMON PLEAS - CASE#2017CP2307967

9:57
SOS



www2.greenvillecounty.org

ELECTRONICALLY FILED - 2019 Feb 28 2:20 PM - GREENVILLE - COMMON PLEAS - CASE#2017CP2307967

STATE OF SOUTH CAROLINA

COUNTY OF GREENVILLE

Sonji Renae McKinney,

                        **Plaintiff,**

v.

Kimura, Inc.,

                        **Defendant.**

IN THE COURT OF COMMON PLEAS

Docket No.: 2017-CP-23-07967

**STIPULATION OF DISMISSAL**

     The undersigned attorney for the Plaintiff and the undersigned attorney for the Defendant Kimura stipulate that all controversy between the parties regarding this action is fully resolved. Therefore, pursuant to Rule 41(a)(1) of the *South Carolina Rules of Civil Procedure*, it is hereby stipulated that the Plaintiff's Complaint and this action are dismissed with prejudice and forever ended. Each party agrees to bear her/his/its own costs and attorney's fees.

_s/Richard K. Allen, III_
RICHARD K. ALLEN, III, S.C. BAR #74865
GUEST & BRADY, LLC
900 E. North Street, Suite 210
Greenville, SC 29601
Attorney for the Plaintiff

_s/Kay G. Crowe_
KAY G. CROWE, S.C. BAR #1481
BARNES, ALFORD, STORK & JOHNSON, LLP
1613 Main Street (29201)
Post Office Box 8448
Columbia, South Carolina 29202
Attorneys for the Defendant

※ I was never told anything about this and Richard dismissed it without my consent!

| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
|---|---|
| COUNTY OF GREENVILLE | |
| Sonji Renae McKinney, | Docket No.: 2017-CP-23-07967 |
| Plaintiff, | |
| v. | **STIPULATION OF DISMISSAL** |
| Kimura, Inc., | |
| Defendant. | |

The undersigned attorney for the Plaintiff and the undersigned attorney for the Defendant Kimura stipulate that all controversy between the parties regarding this action is fully resolved. Therefore, pursuant to Rule 41(a)(1) of the *South Carolina Rules of Civil Procedure*, it is hereby stipulated that the Plaintiff's Complaint and this action are dismissed with prejudice and forever ended. Each party agrees to bear her/his/its own costs and attorney's fees.

RICHARD K. ALLEN, III, S.C. BAR # 74865
GUEST & BRADY, LLC
900 E. North Street, Suite 210
Greenville, SC 29601
Attorney for the Plaintiff

KAY G. CROWE, S.C. BAR #1481
BARNES, ALFORD, STORK & JOHNSON, LLP
1613 Main Street (29201)
Post Office Box 8448
Columbia, South Carolina 29202
Attorneys for the Defendant

**Sherry Crowe**

| | |
|---|---|
| **From:** | Sherry Crowe |
| **Sent:** | Tuesday, October 11, 2016 1:09 PM |
| **To:** | Catina Wideman |
| **Subject:** | RE: Daryl Stephens/Sonja McKinney |

Not a problem at all, I appreciate you taking the time to try to help me, in the mist of all that you have going on with your audit. I hope you pass with flying colors.

Thanks-
Sherry Crowe

**From:** Catina Wideman [mailto:cwideman@kimurainc.com]
**Sent:** Tuesday, October 11, 2016 1:06 PM
**To:** Sherry Crowe <sherrycrowe@guestbrady.com>
**Subject:** RE: Daryl Stephens/Sonja McKinney

Sorry that it took so long, still working through this audit!!! I appreciate your patience.

**From:** Sherry Crowe [mailto:sherrycrowe@guestbrady.com]
**Sent:** Tuesday, October 11, 2016 1:05 PM
**To:** Catina Wideman <cwideman@kimurainc.com>
**Subject:** RE: Daryl Stephens/Sonja McKinney

I greatly appreciate your help in this matter, I will forward your email to the Attorney to see if there is anything else we need.

Thanks-
Sherry Crowe

**From:** Catina Wideman [mailto:cwideman@kimurainc.com]
**Sent:** Monday, October 10, 2016 4:44 PM
**To:** Sherry Crowe <sherrycrowe@guestbrady.com>
**Subject:** FW: Daryl Stephens/Sonja McKinney

Hi Sherry,

Apparently the footage only goes back 90 days. Sorry I couldn't be of more help.

Thanks

**From:** Catina Wideman [mailto:cwideman@kimurainc.com]
**Sent:** Monday, October 10, 2016 12:36 PM
**To:** 'Angela Perry' <angela.perry.ki@gmail.com>; 'Sandra Kuzma' <skuzma@kimurainc.com>
**Subject:** RE: Daryl Stephens/Sonja McKinney

Thanks Angie,

1

Well I think we've done all we can do as far as being diligent.

**From:** Angela Perry [mailto:angela.perry.ki@gmail.com]
**Sent:** Monday, October 10, 2016 12:35 PM
**To:** Catina Wideman <Cwideman@kimurainc.com>; Sandra Kuzma <skuzma@kimurainc.com>
**Subject:** Daryl Stephens/Sonja McKinney

I asked Lee if he could pull footage from that day, he said it only went back 90 days
I went to where I know some are saved, but Dan started that when he came, so there was not one.
Robert Moore was our manager at the time and he is no longer with the company.
Melinda was actually out on leave during that time. She was out from 6/15/2015---7/27/2015.
I am not sure who handled it, like I said, they did not include me in it and I wasn't even sure what all had happened until it was over.
I don't know where else to look.


--
Angela Perry
Human Resources Coordinator
Kimura Inc.
Office: 864-991-3189 ext 220
Cell 864-360-9015

## Sherry Crowe

**From:** Sherry Crowe
**Sent:** Tuesday, October 4, 2016 11:07 AM
**To:** CWideman@kimurainc.com
**Subject:** Subpoena we mailed on 9/15/16
**Attachments:** 20161003163544513.pdf

**Importance:** High

Ms. Wideman here is the subpoena that we mailed to Kimura on 9/15/16.  Sonji McKinney (employee of Drive/Magna) was hit by a forklift while inspecting parts in your facility on 7/17/2015.  Please let me know if you can help me with these requests or if you can point me in the proper direction.  I greatly appreciate your assistance in this matter.

Thanks-
Sherry Crowe
Paralegal to Russell Guest



900 East North Street, Suite 210
Greenville, South Carolina 29601
Telephone: (864) 233-7200
Facsimile:  (864) 242-3667
www.guestbrady.com

**Visit Our New Website:**   *www.guestbrady.com*

NOTE: THE MATERIAL TRANSMITTED AND COMMUNICATED HEREIN IS INTENDED ONLY FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED, AND MAY CONTAIN INFORMATION THAT IS ATTORNEY PRIVILEGED,  CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE UNDER THE APPLICABLE LAW. If the reader of this communication is not the intended recipient, or the employee or agent responsible for delivering this communication to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone (864-233-7200) and delete this email from your files. Regarding any attachment to this email: you MUST notify our offices if you make any changes to the document attached. Guest & Brady, LLC, declares that there is no final or official document except that which is printed from files resident on our computers.

South Carolina Workers' Compensation Commission
1333 Main Street, Suite 500
P.O. BOX 1715
Columbia, SC 29202-1715
803-737-5675



WCC File #: __1510391__
Carrier File #: _____
Carrier Code #: _____
Employer FEIN #: _____

| | |
|---|---|
| Claimant's Name: __Sonji McKinney__ | SSN: __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__ | Employer's Name: __Magna/ Drive Automotive__ |

Address: __PO Box 31__                                    Address: __600 Wilshire Drive__

City: __Simpsonville__    State: __SC__  Zip: __29681__    City: __Troy__    State: __MI__  Zip: __48084__

Home Phone: __( 864 ) 757 - 9488__    __(    )    -__    Insurance Carrier: __America Zurich Ins Co. Zurich North America__

Preparer's Name: __Russell F. Guest__    Law Firm: __Guest & Brady, LLC__    Preparer's Phone #: __( 864 ) 233 - 7200__

## SUBPOENA

To:   Kimura, Inc.
      102 Cherry Blossom Dr.
      Laurens, SC 29360

☐   **YOU ARE COMMANDED** to appear before the above-named Commission at the place, date and time specified below to testify in the above case.

PLACE OF TESTIMONY: _____    ROOM: _____

☐   **YOU ARE COMMANDED** to appear at the place, date and time specified below to testify at the taking of a deposition in the above case.    DATE AND TIME: _____

PLACE OF DEPOSITION: _____    DATE AND TIME: _____

☒   **YOU ARE COMMANDED** to produce and permit inspection and copying of the following documents or objects in your possession, custody or control at the place, date and time specified below.

LIST OF DOCUMENTS:    **See Attached List**

PLACE:   __Guest & Brady, LLC__    DATE AND TIME: __Sept. 30, 2016 at 1:00pm__

☐   **YOU ARE COMMANDED** to permit inspection of the following premises at the date and time specified below.

PREMISES: _____    DATE AND TIME: _____

*THIS SUBPOENA SHALL REMAIN IN EFFECT UNTIL YOU ARE GRANTED PERMISSION TO DEPART BY THE COMMISSIONER OR AN OFFICER ACTING ON BEHALF OF THE COMMISSIONER. QUESTIONS CONCERNING THIS SUBPOENA SHOULD BE ADDRESSED TO THE FOLLOWING ISSUING OFFICER.*

_____    __( 864 ) 233 - 7200__    September 15, 2016
ISSUING OFFICER'S SIGNATURE AND TITLE    PHONE NUMBER    DATE

Serve this form according to R.67-211(C). Refer to R.67-211 and R.67-214 for additional information. Procedural questions may be addressed to the Judicial Department at 803-737-5675.

WCC Form # 27
Rev. 3/2014

# 27

SUBPOENA

# ADDENDUM TO FORM 27
## Sonji McKinney vs. Magna/Drive Automotive

A) The entire investigation file for incident that occurred on your property on 7/17/2015 involving employee of Magna/Drive Automotive Sonji McKinney being hit by a forklift driven by your Employee Daryl O. Stephens

B) Corrective actions taken for your employee Daryl Stephens;

C) Statements from witnesses of this accident;

D) All literature regarding accidents on the job or reporting accidents on the job given or shown to your employee;

E) All First Report of Injury Forms 12-A;

F) All drafts of the form 12-A;

G) OSHA log for DOA;

H) OSHA log of work related injuries and injuries for DOA;

I) All OSHA forms regarding the claimant; and

J) All surveillance videos tapes and pictures of the surrounding area at the time of this accident from 1:00 a.m. to 3:00 a.m.

# U.S. District Court

## Western District of North Carolina

## Notice of Electronic Filing

The following transaction was entered on 9/29/2025 at 11:01 AM EDT and filed on 9/29/2025

| | |
|---|---|
| **Case Name:** | McKinney v. Prisma Health Greenville Hospital et al |
| **Case Number:** | 3:25-cv-00681-MOC-DCK |
| **Filer:** | |
| **Document Number:** | 12 |

**Docket Text:**
**SUMMONS Returned Executed. Richard Allen, Russell Guest, Kimura Logistics, Magna International, Prisma Health Greenville Hospital, WJCB Law Firm (South Lewis) served on 9/11/2025, answer due 10/2/2025. (add)**

**3:25-cv-00681-MOC-DCK Notice has been electronically mailed to:**

Sonji McKinney          mckinneysonji@gmail.com

# U.S. District Court

## Western District of North Carolina

## Notice of Electronic Filing

The following transaction was entered on 9/29/2025 at 11:01 AM EDT and filed on 9/29/2025

**Case Name:** McKinney v. Prisma Health Greenville Hospital et al

**Case Number:** 3:25-cv-00681-MOC-DCK

**Filer:**

**Document Number:** 12

**Docket Text:**
**SUMMONS Returned Executed. Richard Allen, Russell Guest, Kimura Logistics, Magna International, Prisma Health Greenville Hospital, WJCB Law Firm (South Lewis) served on 9/11/2025, answer due 10/2/2025. (add)**

**3:25-cv-00681-MOC-DCK Notice has been electronically mailed to:**

Sonji McKinney      mckinneysonji@gmail.com

⚑ KeyCite Yellow Flag - Negative Treatment

Distinguished by Lee v. Harborside Cafe, S.C.App., May 13, 2002

335 S.C. 77

Court of Appeals of South Carolina.

David **GETSINGER**, Employee, Respondent,

v.

**OWENS-CORNING** FIBERGLAS CORP.,
Employer and Self-Insurer, Carrier, Appellant.

No. 2956.
|
Submitted Feb. 9, 1999.
|
Decided March 8, 1999.
|
Rehearing Denied May 8, 1999.

Claimant sought workers' compensation benefits for depression induced by work-related foot injury. The Circuit Court, Anderson County, Alexander S. Macaulay, J., affirmed the Workers' Compensation Commission's award of benefits, and employer appealed. The Court of Appeals, Howell, C.J., held that: (1) claimant was not required to prove that depression was incident to unusual and extraordinary condition of employment, and (2) finding that depression was induced by foot injury was supported by evidence.

Affirmed.

West Headnotes (6)

**[1]** **Workers' Compensation**
⚷ In general; questions of law or fact

**Workers' Compensation**
⚷ Substantial evidence

In reviewing a decision of the Workers' Compensation Commission, the appellate court will not set aside the commission's findings if they are supported by substantial evidence and not controlled by legal error.

1 Cases that cite this headnote

**[2]** **Workers' Compensation**
⚷ Substantial evidence

"Substantial evidence" is evidence which, considering the record as a whole, would allow reasonable minds to reach the conclusion that the Workers' Compensation Commission reached in order to justify its action.

1 Cases that cite this headnote

**[3]** **Workers' Compensation**
⚷ Injuries or Death for Which Compensation May Be Had

Workers' compensation claimant seeking compensation for depression stemming from the deterioration of his work-related foot injury was not required to prove that the depression was incident to an unusual and extraordinary condition of employment.

1 Cases that cite this headnote

**[4]** **Workers' Compensation**
⚷ Mental and Emotional Disability

**Workers' Compensation**
⚷ Physical injury requirement

Mental injuries are compensable under workers' compensation law if induced either by physical injury or by unusual or extraordinary conditions of employment.

9 Cases that cite this headnote

**[5]** **Workers' Compensation**
⚷ Depression

Finding that workers' compensation claimant's depression was induced by his work-related injury to his foot was supported by evidence that, prior to foot injury, claimant suffered no problems with his foot or psychiatric problems, by claimant's testimony that his depression started when his foot pain worsened and was worried about being able to work, and by treating psychiatrist's testimony that claimant's foot injury precipitated his depression, that work was important to claimant, and that claimant's suicidal

thoughts were related to fact that claimant was sitting at home thinking about not being able to work anymore.

Cases that cite this headnote

[6]  **Workers' Compensation**
    👉 Physical injury requirement

A mental condition which is induced by a physical injury that is compensable under workers' compensation law is causally related to that injury.

9 Cases that cite this headnote

**Attorneys and Law Firms**

**\*\*104  \*78**  Thomas Bailey Smith, of Smith Law Firm, of Pickens, for appellant.

Linda B. McKenzie, of Greenville, for respondent.

**Opinion**

HOWELL, Chief Judge:

David **Getsinger** brought this action against **Owens-Corning** Fiberglas Corporation (**Owens-Corning**) to recover Workers' Compensation benefits. The single commissioner determined **Getsinger** had reached maximum medical improvement and that, due to his work-related physical injury and associated psychological problems, **Getsinger** had sustained a total loss of earning capacity. The commissioner awarded **Getsinger** 500 weeks compensation, offset by previous payments, and ordered **Owens-Corning** to pay **\*\*105** all of **Getsinger's** past and future medical bills incurred from the treatment of his physical and **\*79** psychological problems. The full commission and the circuit court affirmed the commissioner's decision. **Owens-Corning** appeals. We affirm.

**FACTS**

On August 17, 1990, **Getsinger** injured his right foot while at work at **Owens-Corning**. **Getsinger** was initially awarded a 30% disability to his right foot in June 1993.

The disability award was increased by 10% in October 1995. The condition of his foot continued to deteriorate. On December 5, 1995, **Getsinger's** physician noted, "This gentleman has indeed worsened since our last visit and he is now with a 50 percent PPI to the right foot. It is not anticipated that he can return to work at any capacity. We will forward these comments to comp."

**Getsinger** described the pain he feels from his foot when he is at rest as "like a dull toothache." Even if he sits all day, he must elevate his foot because of the swelling. When he tried to roll a 55 gallon drum at work, he felt extreme pain. Often, the pain would not stop and his foot would swell. During the summer of 1995, the pain in **Getsinger's** foot was so bad that he was sometimes unable to walk.

**Getsinger** began to experience symptoms of depression in July 1995. He testified that his depression started when he learned the condition of his foot had deteriorated to the extent he might have to stop working at his current job. He stated he thought constantly about the pain in his foot and his inability to go to work. **Getsinger** testified that he did not want to go out, could not leave the house, and could not concentrate. At times he could not sleep, but at other times he wanted to sleep all day. On occasion, he has cried and has had suicidal thoughts.

At the urging of a nurse at **Owens-Corning**, **Getsinger** contacted **Owens-Corning's** employee assistance program because of his depression. He was immediately referred to Dr. Bamashmus, a psychiatrist. Dr. Bamashmus saw **Getsinger** every two weeks and prescribed medicine for the depression. At the time of the hearing, **Getsinger** continued to suffer from depression and pain and swelling in his foot and leg. According **\*80** to Dr. Bamashmus, **Getsinger** is unable to work because of his psychological condition.

**DISCUSSION**

[1]  [2]  In reviewing a decision of the Workers' Compensation Commission, the appellate court will not set aside the commission's findings "if they are supported by substantial evidence and not controlled by legal error." *Estridge v. Joslyn Clark Controls, Inc.,* 325 S.C. 532, 536, 482 S.E.2d 577, 579 (Ct.App.1997). "Substantial evidence" is evidence which, considering the record as a whole, would allow reasonable minds to reach the

Case 3:25-cv-00681-MOC-DCK    Document 48-1    Filed 10/14/25    Page 25 of 58

conclusion that the commission reached in order to justify its action. *See Lark v. Bi-Lo,* 276 S.C. 130, 136, 276 S.E.2d 304, 307 (1981).

**[3]** <mark>Owens-Corning</mark> contends that in order for a mental injury to be compensable, an employee must prove that his or her mental injury was caused by unusual or extraordinary emotional stimuli regardless of whether the mental injury was accompanied by a physical injury.[1] We disagree.

**[4]** In *Kennedy v. Williamsburg County,* 242 S.C. 477, 131 S.E.2d 512 (1963), the South Carolina Supreme Court recognized as compensable a prison guard's total disability resulting from schizophrenia caused by a head injury the guard suffered when he was attacked by two prisoners. Subsequently, the court held a mental injury unaccompanied by physical injury was compensable, because it was the result of unusual and extraordinary work conditions. *See Stokes v. First Nat'l Bank,* 306 S.C. 46, 50, 410 S.E.2d 248, 250 (1991). Finally, in *Estridge,* we held that "[w]here, as in *Kennedy,* the mental injury is *induced* by physical injury, it is not necessary that it result from unusual or extraordinary conditions of employment." **\*\*106** 325 S.C. at 538, 482 S.E.2d at 580. Thus, "[m]ental injuries are compensable if ... induced *either* by physical injury ... *or* by unusual or extraordinary conditions of employment." *Id.* at 538, 482 S.E.2d at 580 (first ellipsis in original) (emphasis added) (quoting *Stokes v. First Nat'l* **\*81** *Bank,* 298 S.C. 13, 21, 377 S.E.2d 922, 926 (Ct.App.1988), *aff'd,* 306 S.C. 46, 410 S.E.2d 248 (1991)).

In support of its argument, <mark>Owens-Corning</mark> directs our attention to language in the Court of Appeals' decision in *Stokes* noting that "there is no valid justification in such cases for distinguishing between mental disorders resulting from physical injuries and mental disorders brought about by emotional stimuli or stressors which are incident to unusual and extraordinary conditions in employment." *Stokes,* 298 S.C. at 14, 377 S.E.2d at 922-23. This language merely demonstrates that mental injuries induced by physical injury (physical-mental) and mental injuries not induced by physical injury but by the unusual and extraordinary conditions in one's employment (mental-mental) are both compensable. As explained above, physical-mental injuries do not need to be incident to an unusual and extraordinary condition of

employment. *See Estridge,* 325 S.C. at 538, 482 S.E.2d at 580.

**[5]** **[6]** <mark>Owens-Corning</mark> next argues <mark>Getsinger</mark> failed to prove that his physical injury was the legal cause of his mental state, because the depression started almost five years after the physical injury. We disagree. "A [mental] condition which is induced by a compensable physical injury is ... causally related to that injury." *Estridge,* 325 S.C. at 538-39, 482 S.E.2d at 580-81. Therefore, we must determine whether there is substantial evidence that <mark>Getsinger's</mark> physical injury induced his mental injury.[2]

There is substantial evidence to support the commission's finding that <mark>Getsinger's</mark> compensable physical injury induced his mental injury. Prior to the accident, he had not suffered any problems with his leg or foot nor experienced any psychiatric problems. He testified his depression started when he was suffering pain in his foot and was worried about being able to work. In addition, Dr. Bamashmus testified that <mark>Getsinger's</mark> work-related physical injury precipitated his depression, that work was important to <mark>Getsinger</mark>, and that <mark>Getsinger's</mark> suicidal thoughts were "related to the fact that he is sitting at home, thinking about not being able to work anymore; related to the depression; related to the fact that **\*82** he's been actively working all his life and here he is sitting at home doing nothing." This evidence sufficiently establishes that <mark>Getsinger's</mark> foot injury caused his depression.

Moreover, contrary to <mark>Owens-Corning's</mark> argument, <mark>Getsinger's</mark> depression did not occur *suddenly* five years after the accident. The evidence indicates the psychological problems began when his physical injury worsened to the extent he was in constant dull pain with occasional extreme pain and realized he might not be able to work. The record clearly shows that <mark>Getsinger's</mark> physical injury has progressively worsened since the accident. He has had three surgeries on his foot and his impairment rating has increased from 30% in 1993, to 40% in 1995, and to the current 50% that <mark>Owens-Corning</mark> admits he has sustained. These facts, in conjunction with Dr. Bamashmus's testimony and <mark>Getsinger's</mark> dearth of depression problems before the accident, are evidence that the foot injury induced the later depression. Consequently, that the depression did not appear until five years after the accident is irrelevant.

Based on the above analysis, the circuit court's order is

**AFFIRMED.**

**All Citations**

335 S.C. 77, 515 S.E.2d 104

GOOLSBY and CONNOR, JJ., concur.

Footnotes

1   Getsinger admitted that since August of 1990, nothing extraordinary or unusual had happened to him at work.

2   Owens-Corning admitted the physical injury to Getsinger's foot was compensable and caused a 50% impairment of that foot.

WESTLAW © 2016 Thomson Reuters. No claim to original U.S. Government Works.

# WILLSON JONES CARTER & BAXLEY, P.A.

### ATTORNEYS AT LAW

GREENVILLE     CHARLESTON     COLUMBIA     CHARLOTTE     RALEIGH     ATLANTA

Julie E. Harris
Direct (864) 527-3293
Fax (864) 235-6015
jeharris@wjlaw.net

872 S. Pleasantburg Drive
Greenville, SC 29607
www.wjcblaw.net

May 19, 2016

Mr. Russell F. Guest
Guest & Brady, LLC
900 E. North Street, Suite 210
Greenville, SC 29601

Re:     Sonji McKinney vs. Magna Drive Automotive
        WCC File No.: 1510391 DOI: 7/17/2015
        Carrier: American Zurich Insurance Company - Claim No.: 002223-016056-WC-01
        WJC&B File No.: 0090.01946

Dear Mr. Guest:

Enclosed please find the surveillance video and all reports of surveillance conducted on Sonji McKinney.

With kindest regards,

WILLSON JONES CARTER & BAXLEY, P.A.

*Julie E. Harris*

Julie E. Harris
Paralegal to J. South Lewis, II

JEH

Enclosures



Gallagher Bassett
Investigative Services

# *Confidential Report*

## Client Information

| | |
|---|---|
| Company Name: | Gallagher Bassett Services, Inc. - Charlotte NC |
| Client Contact: | Wanda Ensley |
| Client Address: | 8210 University Executive Park Drive<br>Suite 250<br>Charlotte, North Carolina 28262 |
| Insured: | Magna International |
| Client Claim / SIU Number: | 002223-016056-WC-01 |

## GBIS Information

| | |
|---|---|
| File ID: | 381554 |
| Case Manager: | Joseph Mota |
| Investigator: | Patricia Fleming, Duane Graham |
| Date(s) of Investigation: | 08/28/2015, 08/29/2015, 08/30/2015, 09/15/2015 |

## Table Of Contents

I. Claimant Information
II. Preliminary Investigation
III. Client Objectives
IV. Investigative Summary
V. Video Snippet
VI. Detailed Investigative Report

## I – Claimant Information



Gallagher Bassett
Investigative Services

| | |
|---|---|
| Claim Type: | Workers' Compensation |
| Date of Loss: | 07/17/2015 |
| Reported Injury: | Right Shoulder, Neck, Arm, Lower Back, Bottom Right Foot, Right Leg, Below Knee, Left Hand |
| Date of Birth: | 03/14/1975 |
| Social Security #: | 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 |
| Phone Number: | (864) 884-7930 |
| Claimant's Name: | Sonji McKinney |
| Address: | 204 Bells Creek Road Simpsonville, South Carolina |
| Registered Vehicle: | |

## II – Preliminary Investigation

A preliminary investigation of the claimant was conducted. A detailed database search of the claimant's name, address and Social Security Number revealed the following:

| | |
|---|---|
| Name(s): | Sonji McKinney |
| Social Security #: | 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 |
| Date of Birth: | 03/14/1975 |
| Rev. Phone Trace: | (864) 757-9488, (864) 399-9226 (864) 423-8552, (864) 909-2115 (864) 804-7099, (864) 909-9808 (864) 236-9257, (864) 277-4200 (864) 804-7002, (864) 884-4558 (864) 423-8522, (864) 909-3225 (864) 909-5244, (864) 909-7272 (864) 804-8583, (864) 804-9085 (864) 909-4014, (864) 909-4480 (980) 229-7749, (864) 814-9294 (864) 525-3706, (864) 567-5991 (864) 451-9718, (864) 386-0024 (863) 909-4014 |
| Current Address: | 204 Bells Creek Drive, Simpsonville, South Carolina 29681-4295 (Greenville County) |
| Prior Address(es): | PO Box 311, Simpsonville, South Carolina 29681-0311 (Greenville County) (06/2009 to 08/06/2015) |

| Registered Vehicle: | 2009 Acura (South Carolina tag HZB407); 2009 Acura (South Carolina tag JPQ325); 2004 Honda Accord (South Carolina tag AWC708) | Possible Business Affiliation: | |

Possible Property Ownership:

Social Media & Internet Sources:

Whitepages: http://www.whitepages.com/name/Sonji-R-Mckinney/Simpsonville-SC/a7warkr

## III – Client Objectives

The following investigative task was requested:

1. Two days of surveillance

## IV – Investigative Summary

On Saturday, August 29, 2015, surveillance was conducted on Sonji McKinney from 7:00 AM to 11:00 AM for a total of 4 hours. Upon arrival at the provided address of 204 Bells Creek Road, Simpsonville, South Carolina, the investigator observed a Honda Accord parked in front of the residence on the street. During our efforts, several spot checks were made but no changes were observed at the residence. The investigator was unable to confirm the claimant at the residence. A spot check was conducted at the claimant's sister's residence, located at 108 Middleton Street, Greenville, South Carolina. Upon arrival, the investigator observed two males and a female sitting outside on the steps, talking. The investigator returned to the claimant's residence but no changes were observed at the home. The investigator was not able to confirm the claimant presence at the residence; therefore, efforts were terminated in the area. A phone call was placed to the adjuster and a message was left with the days efforts.

On Sunday, August 30, 2015, surveillance was conducted on Sonji McKinney from 7:00 AM to 11:00 AM for a total of 4 hours. Upon arrival at the provided address of 204 Bells Creek Road, Simpsonville, South Carolina, the investigator observed the Honda Accord parked in front of the residence in the street as it was the previous day. During our efforts, spots checks were made but there were no changes at the residence. The investigator attempted to confirm the claimant presence at the residence but efforts were met with negative results. A neighborhood canvass did reveal that the claimant does reside at the residence along with two other females fitting the age description of the daughter. Due to the lack of observable activity on the claimant's part, efforts were terminated in the area. A message was left for the adjuster with our day's efforts.

On Tuesday, September 15, 2015, surveillance was conducted on Sonji McKinney from 6:00 AM to 2:00 PM for a total of 8 hours. Upon arrival at the provided address of the claimant, located at 204 Bells Creek Road, Simpsonville, South Carolina, the investigator observed the beige Honda Accord parked outside the garage. During our efforts, the claimant attended her scheduled medical appointment, driving a silver Acura TL.

She walked with her slight limp when entering the medical facility. She departed the medical facility and drove to an attorney's office in downtown Greenville, South Carolina. After approximately ten minutes she departed the office building and drove to BI-LO grocery store in Simpsonville, South Carolina, where she was observed shopping, pushing a shopping cart and walking around the store with a slight limp. She exited the store with a bag boy pushing her shopping cart of groceries. He placed the groceries her vehicle while the claimant entered the driver side. She departed the area and drove to her residence, where she was observed parking in the garage out of out view. Stationary surveillance was maintained outside her neighborhood but the claimant was not seen departing the area again. Efforts were terminated in area. A phone call was placed to the adjuster, giving her an update for the day. The investigator obtained approximately 3 minutes and 57 seconds of video documentation of the claimant.

Based on this investigation, we recommend conducting an additional two days of surveillance to continue documenting the claimant's activities.

Attachments:



**V – Video Snippet**

Video documentation was obtained on the following date, click here to video:

September 15, 2015

Saturday
August 29, 2015

204 Bells Creek Road
Simpsonville, South Carolina

**7:00 AM**
The investigator arrived in the vicinity of the claimant's provided address, located at 204 Bells Creek Road, Simpsonville, South Carolina, and established surveillance. The residence can be described as a beige with white trim, two-story, single-family house in good condition. Upon arrival, the investigator observed a beige 2000 Honda Accord four door sedan, bearing South Carolina tag #6583GT, registered to Melisha Danielle Mckinney at 302 Chesley Drive, Simpsonville, South Carolina. No outside activity was observed at the residence. Due to the layout of the area, the investigator was forced to establish a surveillance position outside the neighborhood along the claimant's route of departure.

**7:53 AM**
A spot check was made but no changes were observed at the home.

**8:30 AM**
There was no sign of the claimant departing the area.

**9:00 AM**
A spot check was made but no changes were observed at the home.

**9:30 AM**
A spot check was made but no changes were observed at the home.

**10:15 AM**
The investigator attempted to ascertain the claimant's presence at the residence but efforts were met with negative results.

**10:30 AM**
The investigator departed the area en route to the claimant's sister residence.

**10:50 AM**
Upon arrival at 180 Middleton Street, Greenville, South Carolina, the investigator observed a female and two males outside on the steps of the residence, talking. There was no sign of the claimant at the residence. There were no appearances of anyone preparing for a wedding.

**11:00 AM**
The investigator departed the area en route to the claimant's residence but efforts were terminated at this time.

**11:30 AM**
A final spot check of the claimant's residence revealed no changes at the home.

\*                               \*                              \*

Sunday
August 30, 2015

204 Bells Creek Road
Simpsonville, South Carolina

7:00 AM
The investigator arrived in the vicinity of the claimant's provided address, located at 204 Bells Creek Road, Simpsonville, South Carolina, and established surveillance. The residence can be described as a beige with white trim, two-story, single-family house in good condition. Upon arrival, the investigator observed the beige 2000 Honda Accord, parked in the same position as it was the previous day. No outside activity was observed at the residence. Due to the layout of the area, the investigator was forced to establish a surveillance position outside the neighborhood along the claimant's route of departure.

8:00 AM
A spot check was made. No changes were observed at the residence.

9:00 AM
A spot check was made. There were no changes at the home.

10:00 AM
No changes were observed at the residence.

10:40 AM
The investigator attempted to confirm the claimant's presence at the residence but efforts were met with negative results. A neighborhood canvass did reveal that the claimant does reside at the residence along with two other females fitting the age description of the daughter.

11:00 AM
The investigator was not able to confirm the claimant at her residence and elected to terminate efforts in the area.

\*                               \*                              \*

Tuesday
September 15, 2015

204 Bells Creek Road
Simpsonville, South Carolina

6:00 AM
The investigator arrived in the vicinity of the claimant's provided address, located at 204 Bells Creek Road, Simpsonville, South Carolina, and established surveillance. The residence can be described as a beige with white trim, two-story, single-family house in good condition. Upon arrival, the investigator observed the beige Honda Accord, parked in front of the residence.

There was no sign of any lights illuminating from inside the home. Due to the layout of the neighborhood, the investigator secured a surveillance position along the claimant only route of departure.

7:22 AM
A female departed the area as the only occupant of the Honda Accord.

8:02 AM
A spot check was made but no outside activity was observed.

8:15 AM
The investigator departed the area en route to 220 Roper Mountain Road, Greenville, South Carolina, where the claimant was scheduled for a medical appointment.

8:40 AM
Upon arrival at the Carolina Center for Advanced Management of Pain, the investigator secured a surveillance position with a direct view of the only entrance to the facility. The facility is a one-story stucco building next to the Upstate Lung and Critical Care Specialist.

8:53 AM
The claimant arrived at the medical facility as the only occupant of a silver Acura TL, bearing South Carolina tag #HZB407. She exited her vehicle, talking on the phone. She walked towards the entrance of the building with a noticeable limp. She entered the facility, out of our view. For the record, the claimant is described as a 40 year-old African American female, standing approximately 5'5" tall and weighing around 185 pounds. She wore a blue wrap around her head, a black shirt, a dark gray jacket and a pair of black slacks. (Video)

9:54 AM
The claimant exited the facility, walked back to her vehicle, entered the driver side and departed the area. Mobile surveillance was initiated. (Video)

10:03 AM
The claimant drove to a law firm, located at 900 McCray Street, Greenville, South Carolina, where she was observed exiting her vehicle and walking into the building, carrying paperwork. The law firm is described as a brown brick, four-story building with several businesses inside. (Video)

10:06 AM
The claimant exited the building walked back to her vehicle entering the driver side and departing the area. Mobile surveillance was initiated. (Video)

10:28 AM
The claimant drove to BI-LO grocery store in Simpsonville, South Carolina, where she was observed exiting her vehicle and walking into the store. (Video)

10:33 AM
The investigator set out on foot equipped with a hidden camera to obtain video documentation of her while inside the store.

10:36 AM
While inside the store, the claimant was observed walking around shopping, while pushing a shopping cart.

**11:01 AM**
The claimant exited the store along with a bag boy pushing her shopping cart of groceries. She entered the driver side of the vehicle while the bag boy placed her groceries in her trunk. (Video)

**11:03 AM**
The claimant departed the area. Mobile surveillance was initiated.

**11:09 AM**
The claimant drove to her residence and pulled into the two-car garage, closing the door. A surveillance position was established along her route of departure.

**12:00 PM**
There was no sign of the claimant departing the area.

**1:00 PM**
A spot check was made but no changes were observed at the residence.

**1:40 PM**
A spot check was made but no outside activity was observed outside the home.

**2:00 PM**
Due to the lack of outside activity on the claimant's part, efforts were terminated in the area.

End of Report
*

GBIS investigators make reasonable efforts to positively identify the Claimant without compromising the confidential nature of the investigation. We certify that the surveillance video and report are a true and accurate representation of the details of this investigation. Notwithstanding GBIS's best efforts, there may be occasions where someone other than the intended Claimant is videotaped. It is important, therefore, that you review any video footage obtained to insure that the individual depicted is in fact the intended Claimant. In the event that GBIS inadvertently secures video of the incorrect person, its liability is limited to having the case reworked by GBIS at no further expense to you, or to refunding the paid invoice for the service. Invoices generated for services provided by GBIS are reflective of all investigative effort as noted in the appropriate field report, CaseTrak application, or other client communication.

On Sunday, April 10, 2016, from 7:52 a.m. and 2:03 p.m., surveillance efforts were conducted in the vicinity of the CLAIMANTs provided address 204 Bells Creek Drive Simpsonville, SC 29681. Upon arrival the garage door was closed and a black Mercury sedan bearing SC license MER 347 and a black Kia Optima bearing SC license V43 9617 were parked by the curb in front of the residence. The neighbors and the neighborhood watch forced surveillance efforts to be moved outside of the neighborhood along the likely route of egress towards the nearby major shopping area. In the midmorning hours and during a spot check, both vehicles were found to no longer be present at the residence. A canvass was conducted of the nearby businesses and churches but neither vehicle was able to be located. With the CLAIMANT unable to be confirmed within the residence and her current whereabouts unable to be confirmed, surveillance efforts were discontinued at 2:03 p.m. The customer was updated via voicemail.

### *Preliminary Investigation Report*

POINTS OF INTEREST:
  Global options previously conducted surveillance efforts and documented the claimant. They also confirmed the current address.

SOCIAL NETWORKING:

Facebook:
https://www.facebook.com/profile.php?id=100001231718027&sk=about&section
=living&pnref=about  - Possible family member; linked to phone number.
https://www.facebook.com/syntoriam - Family member
Myspace: None Found
LinkedIn: None found

Other: None
https://thatsthem.com/email/godsgirl87@yahoo.com – Reverse email
https://thatsthem.com/email/heard10@hotmail.com – Reverse email

ADDITIONAL WEB HITS:

Pipl.com:
http://10digits.us/n/Sonji_Mckinney/Simpsonville_SC/457ceff831b360a6e322079 c354ca7bc
http://www.yellowpages.com/whitepages/show?fp=eyJmaXJzdCI6IlNvbmppIiwibGFzdCI6Ik1ja2lubmV5Iiwic3RyZWV0IjoiMjA0IEJlbGxzIENyZWVrIERyaXwiY2l0eSI6IlNpbXBzb252aWxsZSIsInN0YXRlIjoiU0MiLCJwaG9uZSI6Ijg2NC03NTctOTQ4OCIsInppcCI6IjI5NjgxIn0%3D&form=sbn  - Yellow pages.
Google.com
http://www.411.com/name/Sonji-Mckinney  - 411.com link
http://www.intelius.com/Find-Phone-Address/Greenville-SC/Kenneth-Mckinney.html?hasSentRedir=1&refer=744 – Intelius link
http://vin.place/vin/sonji-mckinney.41512319.html - Vehicle information

http://southcarolinaprofiles.com/sonji-mckinney-1435724.html - SC profile

Business Listings: None found

Possible Email Addresses:
GODSGIRL87@YAHOO.COM
HATTIE56.SM@GMAIL.COM
HEARD10@HOTMAIL.COM
PRE-SURVEILLANCE INVESTIGATION:

- Claimant's Provided Address: 204 Bells Creek Road Simpsonville SC
- Claimants Most Recently Reported Address: 204 Bells Creek Drive, Simpsonville SC 29681.
- Possible Property Ownership: See comprehensive report.
- A reverse search of the provided telephone number revealed that this is a Verizon wireless mobile based in Greenville, SC.
- Vehicle Registrations: See Comprehensive Report
- Links to satellite imagery of the provided address and area, and other possible recent addresses:
- ADDRESS 1

COMPREHENSIVE REPORT SUMMARY:
Previous & Non-Verified Addr. (16)
UCC Filings: (1)
Phones Plus: (9)
Driver's License: (2)
Possible Properties Owned: (3)
Possible Criminal Records: (17)
Possible Associates: (7)

On Monday, April 11, 2016, from 7:07 a.m. and 3:05 p.m., surveillance efforts were conducted at 204 Bells Creek Drive Simpsonville, SC 29681. Upon arrival the garage door was closed and no vehicles were observed. At 1:42 p.m. a spot check was conducted of the residence and a dark grey 2009 Acura TSX bearing SC license JPQ 325 registered to Sonji and Devonte McKinney 204 Bells Creek Drive Simpsonville, SC 29681 was parked in the driveway. The customer was updated and it was learned that the claimant was scheduled to have a medical appointment at 8 a.m. but the location was not known. Surveillance efforts continued through the afternoon to attempt to monitor for the claimant`s return.



Russell Franklin Guest, Esq.

Kevin Phillip Brady, Esq.
Licensed in SC & FL

Richard Kingsley Allen, III Esq.

900 East North Street Suite 210
Greenville, SC 29601

Telephone: (864) 233-7200
Facsimile: (864) 242-3667
www.guestbrady.com

January 3, 2018

**VIA CERTIFIED MAIL with RETURN RECEIPT**
**Attn:** Charlie P. Farley, Jr.
Kimura Inc.
102 Cherry Blossom Dr
Luarens, SC  29360

> RE:   **Sonji Renae McKinney vs. Kimura Inc.**
>       C.A. No.: 2017-CP-23-07967

Dear Mr. Farley:

Please find enclosed a filed copy of the **Summons and Complaint** regarding the above referenced matter.   This is being served on you as the Registered Agent for Kimura, which is what is shown with the South Carolina Secretary of State.

Sincerely,

**GUEST & BRADY, LLC.**

Russell F. Guest

RFG/sjc
Enclosures

**South Carolina Secretary of State Mark Hammond**

# Business Entities Online

File, Search, and Retrieve Documents Electronically

## KIMURA, INC.

### Corporate Information

**Entity Type:** Corporation

**Status:** Good Standing

**Domestic/Foreign:** Domestic

**Incorporated State:** South Carolina

### Important Dates

**Effective Date:** 05/06/2002

**Expiration Date:** N/A

**Term End Date:** N/A

**Dissolved Date:** N/A

### Registered Agent

**Agent:** CHARLIE P FARLEY JR

**Address:** 102 CHERRY BLOSSOM DR
LAURENS, South Carolina 29360

### Official Documents On File

| Filing Type | Filing Date |
|---|---|
| Change of Agent or Office | 09/05/2002 |
| Incorporation | 05/06/2002 |

For filing questions please contact us at 803-734-2158

Copyright © 2018 State of South Carolina

ELECTRONICALLY FILED - 2017 Dec 20 5:20 PM - GREENVILLE - COMMON PLEAS - CASE#2017CP2307967

| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
|---|---|---|
| | ) | THIRTEENTH JUDICIAL CIRCUIT |
| COUNTY OF GREENVILLE | ) | CASE NO.: 2017-CP-23-07967 |
| | ) | |
| Sonji Renae McKinney, | ) | |
| | ) | |
| Plaintiff(s), | ) | **SUMMONS** |
| | ) | |
| vs. | ) | *(Jury Trial Demanded)* |
| | ) | |
| Kimura Inc., | ) | |
| | ) | |
| Defendant(s). | ) | |
| | ) | |

**TO THE ABOVE-NAMED DEFENDANT:**

YOU ARE HEREBY SUMMONED and required to answer the complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to this complaint upon the subscriber, at the address shown below, within thirty (30) days after service hereof, exclusive of the day of service, and if you fail to answer the complaint, judgment by default will be rendered against you for the relief demanded in the complaint.

**GUEST & BRADY, LLC**

s/: Richard K. Allen, III
Richard K. Allen, III S.C. Bar No. 74865
Russell F. Guest S.C. Bar No. 64250
900 E. North Street, Ste 210
Greenville, SC 29601
rguest@guestbrady.com
rallen@guestbrady.com
PH:   (864) 233-7200
FAX:  (864) 242-3667
ATTORNEYS FOR THE PLAINTIFF

December 20, 2017
Greenville, South Carolina

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS
            ) THIRTEENTH JUDICIAL CIRCUIT
COUNTY OF GREENVILLE ) CASE NO.: 2017-CP-23-_____
            )
Sonji Renae McKinney,    )
            )
     Plaintiff(s),  )    **COMPLAINT**
            )
   vs.       )   *(Jury Trial Demanded)*
            )
Kimura, Inc.,      )
            )
     Defendant(s). )
_____)

The Plaintiff, Sonji Renae McKinney, by and through her undersigned counsel would

submit and respectfully show unto this Court the following:

## PARTIES AND JURISDICTION

1. Plaintiff is a citizen and resident of Greenville County, South Carolina.

2. Upon information and belief, Defendant, Kimura, Inc., is a business organized and

existing under the laws of the State of South Carolina.

3. At all times relevant to this action, Defendant did act and conduct its business in

Greenville County, South Carolina, by and through its agents, servants, employees and

representatives who were acting within the scope of their employment and/or assigned duties.

4. This Court has jurisdiction over the parties and subject matter of this action and venue

is proper in Greenville County, South Carolina.

## FACTUAL BACKGROUND

5. Plaintiff reasserts and reiterates the allegations above as if fully repeated hereinbelow

verbatim.

Page 2 of 7

ELECTRONICALLY FILED - 2017 Dec 20 5:20 PM - GREENVILLE - COMMON PLEAS - CASE#2017CP2307967

6.     On or about July 17, 2015, Plaintiff was an invitee on the premises of the Defendant's Piedmont location, where she was inspecting parts.

7.     At all times mentioned as to the premises, the Defendant was the owner and/or operator in possession and control of the Piedmont location where the Plaintiff was injured.

8.     As Plaintiff was performing her duties, a forklift carrying bin(s) driven by Daryl O. Stephens, an employee of the Defendant, collided with the Plaintiff causing her to fall to the concrete surface.

9.     At the time that the forklift collided with the Plaintiff, the Defendant's employee Mr. Stephens provided no warning that he was moving in Plaintiff's direction and admittedly failed to keep a proper look out.

10.     The Plaintiff was assisted at the scene for her injuries and transported from the scene by ambulance to the hospital.

11.     The Plaintiff began to experience symptoms related to the injury immediately after the forklift collision and has sought continuous treatment ever since.

12.     As a direct and proximate result of the Defendant's wrongful conduct, Plaintiff has suffered and continues to suffer serious personal debilitating injuries and damages.

<u>**FOR A FIRST CAUSE OF ACTION**</u>
**(Negligence/Gross Negligence)**

13.     Plaintiff reasserts and reiterates the allegations above as if fully repeated hereinbelow verbatim.

14.     At all times relevant to this action, the subject property was under the ownership, care and control of the Defendant.

15.     The Defendant owed duties to: (a.) warn invitees of a known dangerous condition existing on the premises; (b.) provide for the safety of invitees and take reasonable precautions to

remove or mitigate a known dangerous condition; (c.) take reasonable precautions to inspect or discover a known dangerous condition, (d.) safely design, construct and maintain a facility layout free of unreasonable, foreseeable pedestrian hazards; (e.) anticipate the harm to its invitees despite any obviousness of the dangerous conditions and to take precautions to remove the potential dangers or harm; and (f.) exercise reasonable prudence to maintain an environment that was safe and free from dangerous conditions that pose risk of harm to invitees.

16. The Defendant, by and through its agents, servants, employees and representatives, who were acting within the scope of their employment or official duties, created and maintained a dangerous condition and/or knew or should have known that a dangerous condition existed, but failed to take reasonable measures to prevent, warn, or eliminate the dangerous condition.

17. The Defendant was responsible for the acts and/or omissions of its agents, servants, employees and representatives while acting within the scope of their official duties and employment.

18. The Defendant, through its agents, servants, employees and representatives, was negligent, grossly negligent, willful and wanton in one or more of the following particulars, to wit:

    a. In failing to properly investigate, hire, train and/or supervise its agents, servants, employees and representatives, including but not limited to Mr. Stephens;

    b. By failing to keep a proper look out, control and/or provide adequate warning of approaching motorized equipment;

    c. By failing to maintain adequate policies and procedures governing the inspection and safe operation of motorized equipment and/or otherwise failing to abide by said policies and procedures;

    d. By failing to anticipate that an invitee, such as Plaintiff, would nevertheless encounter the dangerous condition, or that she would likely be distracted, if the condition is asserted to be or deemed an obvious condition;

    e. By designing, creating and/or maintaining a facility layout in such a way that resulted

ELECTRONICALLY FILED - 2017 Dec 20 5:20 PM - GREENVILLE - COMMON PLEAS - CASE#2017CP2307967

in the foreseeable unsafe and dangerous conditions for invitees present on the facility floor;

f.   In creating a dangerous condition on its grounds;

g.   By failing to adequately discover and/or remedy a dangerous condition despite having actual and/or constructive knowledge of the same;

h.   By failing to adequately warn invitees that a dangerous condition existed;

i.   By failing to hire, employ, contract with, or otherwise adequately train or supervise persons knowledgeable in safety or otherwise capable of evaluating the risks and hazards on the premises;

j.   By failing to use that degree care and caution that a reasonably prudent person would have used under similar circumstances; and

k.   In such and further particulars as the evidence at trial might show.

Any or all the aforementioned breaches constitute a violation of the laws and/or ordinances applicable to this action, which have directly and proximately caused Plaintiff to suffer injuries and damages.

19.   As a direct and proximate result of Defendant's negligence, gross negligence, careless, willful and wanton acts or omissions, the Plaintiff has suffered and continues to suffer actual damages, both economic and noneconomic in nature, including but not limited to medical bills, severe physical and psychological injuries, pain and suffering, loss of enjoyment of life, permanent impairment, lost wages, loss of present and future earning capacity, and continuing and future medical treatment in an amount to be determined by a jury, punitive damages, along with an award of costs and applicable interest, including pre-judgment interest.

## FOR A SECOND CAUSE OF ACTION
### (Negligent Supervision and Hiring)

20.   Plaintiff reasserts and reiterates the allegations above as if fully repeated hereinbelow verbatim.

21.   Upon information and belief, Mr. Stephens was employed by the Defendant and acting

within the scope of his employment and duties at all times relevant to this action.

22.   The Defendant had a duty to reasonably investigate, hire, train, manage, monitor, direct, control and supervise the actions of its agents, servants, employees and representatives.

23.   Upon information and belief, the Defendant knew or should have known of the necessity to reasonably investigate, hire, train, manage, monitor, direct, control and supervise the actions of its agents, servants, employees and representatives.

24.   Plaintiff is informed and believes that the Defendant had both the ability and opportunity to exercise such supervision with regard to its agents, servants, employees and representatives.

25.   The Defendant breached its duty and was otherwise negligent, willful and wanton in its failure to investigate, hire, train, manage, monitor, direct, control, and supervise the actions of its agents, servants, employees and representatives and in such other particulars as may be revealed throughout the discovery process.

26.   As a direct and proximate result of Defendant's negligence, negligent hiring and negligent supervision gross negligence, careless, willful and wanton acts or omissions, the Plaintiff has suffered and continues to suffer actual damages, both economic and noneconomic in nature, including but not limited to medical bills, severe physical and psychological injuries, pain and suffering, loss of enjoyment of life, permanent impairment, lost wages, loss of present and future earning capacity, and continuing and future medical treatment in an amount to be determined by a jury, punitive damages, along with an award of costs and applicable interest, including pre-judgment interest.

**WHEREFORE**, Plaintiff prays for judgment against the Defendant in an amount to be determined by a jury for actual damages, punitive damages, costs of this action, together with an award of applicable interest, including pre-judgment interest, and for such other and further relief

Page **6** of 7

ELECTRONICALLY FILED - 2017 Dec 20 5:20 PM - GREENVILLE - COMMON PLEAS - CASE#2017CP2307967

as the Court may deem just and proper.

**[Plaintiff requests a jury trial.]**

**GUEST & BRADY, LLC**

s/:  Richard K. Allen, III
Richard K. Allen, III S.C. Bar No. 74865
Russell F. Guest S.C. Bar No. 64250
900 E. North Street, Ste 210
Greenville, SC 29601
rguest@guestbrady.com
rallen@guestbrady.com
PH:    (864) 233-7200
FAX:   (864) 242-3667
ATTORNEYS FOR THE PLAINTIFF

December 20, 2017
Greenville, South Carolina

ELECTRONICALLY FILED - 2017 Dec 20 5:20 PM - GREENVILLE - COMMON PLEAS - CASE#2017CP2307967

STATE OF SOUTH CAROLINA

COUNTY OF GREENVILLE

IN THE COURT OF COMMON PLEAS

Sonji Renae McKinney,

Plaintiff,

v.

Kimura, Inc.,

Defendant.

Docket No.: 2017-CP-23-07967

**ANSWER**

The Defendant, Kimura, Inc., answers the Complaint herein as follows:

**FOR A FIRST DEFENSE TO THE PORTION OF THE COMPLAINT
CAPTIONED PARTIES AND JURISDICTION**

1.    The Defendant denies each and every allegation not specifically hereinafter admitted.

2.    Denies the allegations of Paragraph 1 based on lack of information and belief.

3.    Admits the allegations of paragraphs 2, 3 and 4.

**FOR A FIRST DEFENSE TO THE PORTION OF THE COMPLAINT
CAPTIONED FACTUAL BACKGROUND**

4.    The defendant denies each and every allegation not specifically hereinafter admitted.

5.    In response to paragraph 5 would repeat the response set forth above in paragraphs 1-3 as if repeated verbatim herein.

6.    Denies the allegations of paragraph 6 as stated and would show that on July 15, 2015 the plaintiff was a statutory employee of Kimura and was working in the Kimura plant.

7.   In response to paragraph 7 would deny this paragraph as stated but would admit that Kimura, Inc. was the owner and or operator in possession of the Kimura location where the plaintiff's employment was located.

8.   In response to paragraph 8 would show that a forklift was being driven by an employee of Kimura named Daryl O. Stephens, and Plaintiff fell.  All remaining allegations are denied.

9.   Denies the allegations of paragraph 9.

10.   Admits the allegations of paragraph 10.

11.   Denies the allegations of paragraphs 11 and 12.

**FOR A FIRST DEFENSE TO THE PARAGRAPH CAPTIONED**
**FOR A FIRST CAUSE OF ACTION**

12.   The Defendant in response to paragraph 13 would repeat each of the above stated paragraphs as if repeated herein verbatim.

13.   Admits the allegations of paragraph 14 and 16 and 17.

14.   Denies the allegations of paragraph 15 and would deny that the Plaintiff was an invitee and assert that she was at that time at statutory employee.

15.   Denies the allegations of paragraphs 18 and 19.

**FOR A FIRST DEFENSE TO THE PARAGRAPH CAPTIONED**
**FOR A SECOND CAUSE OF ACTION**

16.   The defendant in response to paragraph 20 would repeat each of the above stated paragraphs as if repeated herein verbatim.

17.   Admits the allegations of paragraphs 21, 22, 23 and 24.

18.   Denies the allegations of paragraphs 25 and 26.

ELECTRONICALLY FILED - 2018 Feb 08 10:52 AM - GREENVILLE - COMMON PLEAS - CASE#2017CP2307967

## FOR A SECOND DEFENSE TO ALL CAUSES OF ACTION

19. This action is barred by the workers compensation act and the plaintiff status as a statutory employee of Kimura.

## FOR A THIRD DEFENSE TO ALL CAUSES OF ACTION

(Plaintiff's Greater Degree of Comparative Fault)

20. The allegations of the above defenses are realleged as fully as if repeated herein verbatim.

21. The Defendant would further show, upon information and belief, that any loss, injury and/or damage sustained by the Plaintiff, without admitting the Plaintiff was injured and/or damaged, was directly and proximately caused by the negligence, willfulness, carelessness and/or recklessness of the Plaintiff, alone or combining with and contributing to any such acts alleged on the part of the Defendant, which are denied. Such negligent, contributorily negligent, careless, reckless and/or willful conduct on the part of the Plaintiff was the direct and proximate cause of any alleged loss, damage and/or injury suffered by the Plaintiff. This negligence, willfulness, carelessness and/or recklessness of the Plaintiff exceeds any negligence or recklessness on the part of Defendant, which negligence or recklessness is denied. The Defendant pleads the Plaintiff's greater degree of comparative fault as a complete bar to any recovery under the Complaint.

## FOR A FOURTH DEFENSE
(Comparative Negligence)

22. The allegations of the above defenses are realleged as fully as if repeated herein verbatim.

23. As an alternative defense to the Complaint, the Defendant alleges, upon information and belief, that any loss, injury and/or damage sustained by the Plaintiff directly and

ELECTRONICALLY FILED - 2018 Feb 08 10:52 AM - GREENVILLE - COMMON PLEAS - CASE#2017CP2307967

proximately resulted from the Plaintiff's own acts and/or omissions constituting negligence, willfulness, carelessness and/or recklessness, or that these acts or omissions combined and concurred with alleged acts or omissions of negligence and/or recklessness of the Defendant (these allegations being specifically denied). Therefore, if the Defendant's degree of comparative fault exceeded the Plaintiff's degree of comparative fault, which is denied, any damage awarded the Plaintiff under her Complaint should be reduced by that percentage of the comparative negligence, willfulness, carelessness and/or recklessness on the part of the Plaintiff which directly and proximately resulted in the losses, injuries and damages the Plaintiff allegedly sustained.

## FOR A FIFTH DEFENSE
### (Proximate Cause)

24.     That no acts or omissions on the part of this Defendant were the proximate cause or cause in fact of the alleged injuries.

## FOR A SIXTH DEFENSE
### (Failure to Mitigate)

25.     The Defendant would further show, upon information and belief that the Plaintiff has failed to mitigate her damages.

## FOR A SEVENTH DEFENSE
### (Assumption of Risk)

26.     The Plaintiff by her activities alleged in the Complaint assumed the risk of injury. Therefore, the doctrine of assumption of the risk bars the recovery sought by the Plaintiff.

ELECTRONICALLY FILED - 2018 Feb 08 10:52 AM - GREENVILLE - COMMON PLEAS - CASE#2017CP2307967

ELECTRONICALLY FILED - 2018 Feb 08 10:52 AM - GREENVILLE - COMMON PLEAS - CASE#2017CP2307967

## FOR AN EIGHTH DEFENSE
(Unavoidable Accident)

27.     The Defendant would further show, upon information and belief, that the injuries or losses suffered by the Plaintiff (such injuries or losses being denied) were the result of and caused by an unavoidable accident, thereby barring any claim whatsoever.

## FOR A NINTH DEFENSE

28.     This action is barred as the sole remedy for this Plaintiff is workers compensation. The SC law on exclusive remedy bars this claim.

## FOR A TENTH DEFENSE
(Punitive Damages)

29.     Defendant would further show that the imposition of punitive damages as sought by the Plaintiff would violate the rights of this Defendant under the Common Law of the State of South Carolina and the Constitutions of the United States and the State of South Carolina in that:

a.      An award of punitive damages would violate the rights of this Defendant to due process and equal protection of the laws, as guaranteed by the United States Constitution and its 14th Amendment, and similar protections afforded by the South Carolina Constitution;

b.      South Carolina law provides no constitutionally adequate or meaningful standards to guide a jury in imposing a punitive award, or give to the public, including this Defendant, the reasonable and constitutionally required notice of the kind of conduct which may subject it to sanctions, or of the likely amount of such sanctions. Since scienter is an indispensable element of a criminal charge, this Defendant should not be subjected to the risk of punishment for an alleged

ELECTRONICALLY FILED - 2018 Feb 08 10:52 AM - GREENVILLE - COMMON PLEAS - CASE#2017CP2307967

offense as to which scienter is impossible because there are no ascertainable standards other than the whim of a jury.

c.  South Carolina law leaves the determination of the fact and amount of punitive damages to the arbitrary discretion of the trier of fact, without providing adequate or meaningful limits to the exercise of that discretion. This constitutes a taking without due process of law.

d.  No provision of South Carolina law provides adequate procedural safeguards consistent with the criteria set forth in the decisions of the United States Supreme Court for the imposition of a punitive award.

### AS TO FURTHER CLAIMS AND DEFENSES TO THE PLAINTIFF'S COMPLAINT

30.  The Defendant serves notice that it will amend this Answer to assert additional claims and defenses should it appear through discovery and investigation that additional claims and defenses are available.

WHEREFORE, having fully answered the Complaint of the Plaintiff, the Defendant prays that this Court inquire into the matters addressed herein, and issue its Order dismissing the Complaint against this Defendant, with costs, fees and expenses to this Defendant, and such other and further relief as this Court may deem just and proper.

s/Kay Gaffney Crowe
KAY G. CROWE, S.C. BAR #1481
BARNES, ALFORD, STORK & JOHNSON, LLP
1613 Main Street (29201)
Post Office Box 8448
Columbia, South Carolina 29202
803.799.1111 (Office)
803.254.1335 (Fax)
kay@basjlaw.com

February 8, 2018

**Mckinney, Sonji**

| | |
|---|---|
| From: | Cruickshank, Angus |
| Sent: | Thursday, April 10, 2014 6:22 PM |
| To: | Mckinney, Sonji |
| Subject: | Re: 321 & 322 Inspection |

If Dee ever gives up as supervisor please tell me you will put in for the job. You do a great job!

Angus
864 436 9268

On Apr 10, 2014, at 6:13 PM, "Mckinney, Sonji" <SMckinney@cosma.com> wrote:

<7232321-322 Insp Instr (Assy).xls>



Debra Vronch
Mobile

My condition is the same.. Seems it is getting worse.. I'll keep you updated..
~"Godsgirl I Am"~

3:50 AM

My muscles are still flared up.. I can barely walk..
~"Godsgirl I Am"~

10:13 AM

Debbie,
I apologize that I couldn't make it but my neck has been swelling & still is also I'm in alot of pain.. Can I use a sick day & I'll return in the morning.. I've worked all the days I could & today I couldn't.. I have pain everyday but I've work through it..
~"Godsgirl I Am"~

Type a message...



# EXHIBIT "A"

## Rule 30(b)(6) Deposition of Kimura, Inc./Mike Shoffner - 12-14-18

**Sheet 31    Page 121**

**121**

1  A.  Yes.
2  Q.  This is a document that was created by Kimura?
3  A.  Yes.
4  Q.  As a part of its regular business practices?
5  A.  I'm not sure what you're asking me.
6  Q.  It was created in the course of or as a part of
7     operating its business?
8  A.  Yes.
9  Q.  And the same for Plaintiff's 3 and 4?
10 A.  I would say yes on 3 and yes on 4.
11 Q.  So these are a part of Kimura's regular operation
12    and business?
13 A.  It's part of the orientation, as answered
14    earlier.
15 Q.  Which is I guess a component part of Kimura's
16    business as a logistics company, though?
17 A.  Part of onboarding a new hire, so yes, part of
18    the business.
19 Q.  Incident reports, these policies and procedures,
20    I mean, those are part of Kimura's normal course
21    of business?
22 A.  They are.
23        MR. ALLEN: Let's go ahead and mark this.
24 (EXHIBIT NUMBER 8 MARKED)
25 EXAMINATION RESUMED BY MR. ALLEN:

**Page 122**

**122**

1  Q.  I want to show you Plaintiff's Exhibit 8.
2  A.  (Reviewing document).  Okay.
3  Q.  Do you recognize that document?
4  A.  I know what the document is.
5  Q.  Tell us about it.
6  A.  It's a notice of liability claim placed against
7     Kimura.
8  Q.  Tell me about your involvement I guess with this
9     particular occurrence and claim.  I mean, you
10    would agree it's got your name on it?
11 A.  I was the person to contact.
12 Q.  So did you reach out -- what was that process or
13    what I guess led to this document?
14 A.  So the process that would have led to this
15    document is at some point in time, and it's my
16    understanding this was about six months after the
17    incident occurred -- 1/6 of 2016 is the date on
18    this, that we were notified that Drive Automotive
19    was subrogating this claim of accident to us.
20 Q.  And this is for the claim for Ms. McKinney?
21 A.  Yes.
22 Q.  She's an employee of Magna International?
23 A.  I don't know what her current status is.
24 Q.  At the time of this, she was an employee of Magna
25    International?

**Page 123**

**123**

1  A.  I know she worked at Drive.
2  Q.  Is that what it says?
3  A.  That's what this statement says, yes.
4  Q.  She's not a Kimura employee?
5  A.  No.
6  Q.  Did you give the description of the incident?
7     Did you --
8  A.  I did not.
9  Q.  Do you know who did?
10 A.  It would be taken from the claim, the incident
11    report probably.  It looks like the exact same
12    statement.
13 Q.  Exhibit 5 is what you're --
14 A.  I think so.
15 Q.  Do you know who would have filed this?
16 A.  That would have come from Magna subrogating the
17    claim through their insurance carrier to our
18    insurance carrier is how I understand that works.
19 Q.  And you would have been the point of contact at
20    that time for Kimura?
21 A.  Our insurance would have reached out to myself
22    and I'm pretty sure my manager at the time, the
23    president of the company, who sits in Laurens.
24 Q.  Who is he?
25 A.  That was Hiramatsu, Yoshiya Hiramatsu, Y-O-S-I-H-

**Page 124**

**124**

1     Y-A I believe, Hiramatsu.
2  Q.  Kimura's corporate office is in Laurens?
3  A.  Uh-huh.
4  Q.  Does Kimura maintain any other locations outside
5     of South Carolina, to your knowledge?
6  A.  Not to my knowledge, no.
7  Q.  Was Kimura formed in South Carolina?
8  A.  No.  I need to back that up.  I'm not sure where
9     they were formed.  I know when they first started
10    here 12, 14 years ago, there was an operation in
11    Georgia, but I don't know where they actually
12    formed.
13 A.  This was in the documents we were provided this
14    morning, KI Logistics Matrix Business Park
15    Operations to Support Automotive Production.  Are
16    you familiar with this document?
17 A.  I don't know the whole package.  I could look
18    through it and familiarize myself, but --
19 Q.  Just take a quick look at it.  I've got a few
20    questions for you.
21 A.  (Reviewing document.)
22 Q.  Are you familiar with this document?
23 A.  I've seen 95 percent of that in one format or
24    another.
25 Q.  What's the date of this document?

Carolina Court Reporting, LLC | 864-525-5566 | ssmithccr@charter.net

## I LEFT BECAUSE SHE MOVED MY CHAIR

28

| | | |
|---|---|---|
| 1 | | HAD TO ROTATE. |
| 2 | Q. | NOW, WHEN YOU SAY DEBBIE, ARE YOU TALKING ABOUT DEB |
| 3 | | VRONCH? |
| 4 | A. | YES. |
| 5 | Q. | OKAY. |
| 6 | A. | AND SHE MOVED MY CHAIR JUST SO I COULDN'T SIT DOWN, |
| 7 | | SO -- AND IT WAS PAINFUL WALKING AND JUST, YOU KNOW, |
| 8 | | MOVING UP AND DOWN.  DOING PAYROLL -- IT WAS JUST |
| 9 | | HARD. |
| 10 | Q. | ALL RIGHT.  SO I'M GOING TO MAKE SURE IT'S REAL |
| 11 | | CLEAR.  YOU'RE SAYING THAT THE LAST DAY YOU WORKED |
| 12 | | WAS THE SATURDAY BEFORE EASTER, AND THE REASON THAT |
| 13 | | YOU DIDN'T WORK ANYMORE AFTER THAT IS BECAUSE YOU |
| 14 | | SAY DEB TOOK YOUR CHAIR FROM YOU? |
| 15 | A. | YEAH, AND IT WAS TOO PAINFUL FOR ME TO STAND UP AND |
| 16 | | WORK.  IT WAS TOO PAINFUL.  IT WAS PAINFUL FOR ME. |
| 17 | | AND EVEN THOUGH I HAD A CART, I STILL HAD TO GET OFF |
| 18 | | AND ON, OFF AND ON, YOU KNOW, TALKING TO DIFFERENT |
| 19 | | EMPLOYEES.  IT'S JUST THAT I WAS DOING TOO MUCH.  I |
| 20 | | COULDN'T -- I COULDN'T PERFORM THE 90 PERCENT |
| 21 | | WALKING AND STANDING THAT SHE REQUIRED.  THOSE WERE |
| 22 | | HER EXPECTATIONS AND I COULD NOT MEET THEM. |
| 23 | Q. | EXPLAIN THAT TO ME A LITTLE MORE.  SHE REQUIRED 90 |
| 24 | | PERCENT WALKING AND STANDING? |
| 25 | A. | YES.  YES, SIR.  ON THE FLOOR IN OUR DEPARTMENT, |